THE MENOMINEE.

(Circuit Court of Appeals, Third Circuit. June 18, 1912.)

No. 1,586.

1. COLLISION (§ 52*)—OVERTAKING VESSEL—NAVIGATION OF VESSEL AHEAD.
    Where an overtaking vessel has indicated her intention to pass on the starboard side, and the maneuver is assented to, it is the duty of the· vessel ahead, if for any reason the passage cannot be made in safety by holding her course, to give way to port if she has unobstructed sea-room on that side.
    [Ed. Note.—For other cases, see Collision, Cent. Dig. § 62; Dec. Dig. § 52.* ,
    Collision, overtaking vessels, see note to The Rebecca, 60 C. C. A. 254.]

2. COLLISION (§ 54*)—OVERTAKING VESSEL.
    The Caprivi, while passing up the Delaware river, received a signal from the Menominee, a larger and faster vessel, which was following, of the latter's intention to pass on the starboard side of the Caprivi, which the latter at once assented to. Just ahead it was necessary for

vessels to pass to the west of a buoy, and for this purpose the Menominee pressed too close to the Caprivi in attempting to pass between her and the buoy, resulting in a collision. *Held*, that both vessels were at fault; the Menominee in pressing her attempt to round the buoy when she saw the Caprivi was holding a course which rendered such act perilous, and the Caprivi in failing to move westwardly to give way to the Menominee, knowing that she intended to pass, after having consented that she execute such maneuver on the starboard side.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 63; Dec. Dig. § 54.*]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

Suit in admiralty for collision by Anders Holtung, master of the steamship Caprivi, against the steamship Menominee. From a decree for respondent (190 Fed. 282), libelant appeals. Reversed, with instructions.

Charles S. Haight, of New York City, Henry R. Edmunds, of Philadelphia, Pa., and Clarence Bishop Smith, for appellant.

H. Alan Dawson, of Philadelphia, Pa., and J. Rodman Paul (Biddle, Paul & Jayne, of counsel), for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and BRADFORD, District Judge.

BRADFORD, District Judge. [1] This is an appeal by Anders Holtung, master of the Norwegian steamship Caprivi, the libelant below, from a decree of the district court of the United States for the eastern district of Pennsylvania holding the Caprivi wholly and solely at fault for a collision between that vessel and the British steamship Menominee, and dismissing the libel with costs. The collision occurred March 18, 1907, about nine o'clock in the morning, on the Delaware river in that portion of the channel known as Cherry Island cut and at a point between the mouth of the Christiana river and the lower end of the Edge Moor range. The day was calm and clear and there was nothing to obstruct the view by either vessel of the other for a considerable time before the collision. Whatever its cause, it was not due to any inability on the part of the vessels distinctly to observe their respective movements and their relative positions as they came in proximity to each other. The Caprivi is of 1872 tons net register, was laden with iron ore and drew between 23 and 24 feet. The Menominee is of 4441 tons net register, was comparatively light and drew about 22 feet 6 inches aft and 15 feet 6 inches forward. Each vessel was in charge of a duly licensed pilot. Until a few minutes before the collision the speed maintained by the Caprivi was from 8 to 9 knots an hour through the water and that of the Menominee about 12 knots. Both vessels were proceeding up the river to Philadelphia. The Menominee had been following and was in sight of the Caprivi all the way from Reedy Island and was steadily overhauling her. After the Caprivi had entered the Cherry Island cut and was proceeding practically on the

Cherry Island range the. Menominee gave one blast and the Caprivi promptly replied with a similar blast. By this exchange of signals the Menominee informed the Caprivi of her desire and intention to pass the latter vessel on her starboard side, and the Caprivi consented and agreed that the Menominee should pass her on that side. At this time, while the distance between the vessels is variously estimated by different witnesses, it is clear beyond all reasonable question that it was sufficient to allow them without peril of collision and in entire safety to-execute the maneuver agreed on. There is some conflict in the evidence on the point whether the vessels did not twice exchange single blast signals. But this point is wholly unimportant, as after the last exchange, if more than one, there was ample opportunity to carry out in safety the agreement between the vessels. Under these circumstances it was primarily the duty of the Caprivi to hold her course and of the Menominee to pass on her starboard side. But if for any reason the Menominee could not safely pass on that side if the Caprivi continued to hold her course, and if the latter vessel had ample and unobstructed sea-room on her port side, it manifestly was her duty to starboard her helm and so alter her course westwardly as to permit the agreed maneuver to be safely executed. [2] At the upper end of Cherry Island cut there was at the time of the collision a red buoy, then numbered 28, and above that cut is the Edge Moor range bearing away from the Cherry Island range at an angle of about two and one-half points eastwardly or to the starboard of a vessel passing up the river on the line of the Cherry Island range. This buoy was situated on the easterly side of Cherry Island cut and vessels of the draft of the Menominee proceeding up the river were compelled from lack of sufficient water to the east of the buoy to pass to the west of it. The theory of the appellee as to the cause of the collision is inherently and grossly improbable. It is that when and after the Caprivi entered the Cherry Island cut she held her course practically on the line of the Cherry Island range, the Menominee following on her starboard quarter and gradually overtaking her; and that when the Caprivi had reached a point not far below buoy number 28 she suddenly and without necessity or cause ported her helm and swung several points to starboard, passing for the greater part of her length across the port bow of the Menominee, the bulge of which struck the Caprivi on her starboard side from forty to fifty feet from her stern, and that the collision occurred about one hundred yards below buoy number 28. That an old and experienced pilot like Schellinger who was thoroughly acquainted with the navigable channels of the Delaware should without the slightest cause and while in his senses (and there is no evidence that he was not in full possession of his faculties) should have executed or intended such a maneuver is incredible in the absence of evidence of such quality and strength as to be conclusive on the point. The evidence shows that the Caprivi did not make the change to starboard charged against her, but that in passing through the Cherry Island cut before and after the exchange signals of a single blast were given, and until a few moments before the collision when matters were in extremis, held and main-

tained her course without deviation, and that this course while· ap-, proximately parallel to was not along the line of the Cherry Island range but bore away from it to such an extent as to render it, impracticable for the Menominee safely to pass between her and, the buoy. Both vessels, in our opinion, were in fault. The Caprivi, knowing that the Menominee´intended to pass her and having consented that she should pass her on her starboard side, and having plenty of sea-room on her· port side, was in fault for failing to· move westwardly and give the Menominee sufficient space to pass between her and the buoy without peril of collision through suction or from other cause. And the Menominee was in fault for pressing on in her attempt to round buoy number 28 ahead of the Caprivi when she saw that the latter vessel was holding a course which rendered it perilous if not impracticable to overtake the Caprivi and pass between her and the buoy owing to the want of space or the operation of suction. It was the duty of the Menominee under the circumstances disclosed earlier to slow down or stop until after the buoy had been turned by the Caprivi when she could safely· have overtaken and passed the latter vessel. We think there was error on the part of the court below in holding the Caprivi solely in fault for the collision, and that both vessels should have been found in fault and the damages and costs divided between them. The decree below is reversed with instructions that a decree be entered finding both vessels in fault and equally dividing between them the damages and the costs of this cause both in this court and in the court below.